SHAWN A. LUIZ (6855)
841 Bishop Street, Suite 200
Honolulu, Hawaii 96813
Telephone: (808) 538 - 0500
Facsimile: (808) 564 - 0010
E - mail: attorneyluiz@gmail.com

Attorney for Plaintiffs
MICHELLE SANFILIPPO and
VICTORIA OGASAWARA

Electronically Filed
FIRST CIRCUIT
1CCV-21-0000282
09-MAR-2021
07:34 PM
Dkt. 1 CMPS

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | | |
|---|---|---|
| MICHELLE SANFILIPPO, and VICTORIA OGASAWARA, | ) ) ) | CIVIL NO. _____ (Other Non-Motor Vehicle Tort) |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | |
| THE QUEEN'S MEDICAL CENTER; AND DOE DEFENDANTS 1-100, | ) ) ) | **COMPLAINT; VERIFICATION; DEMAND FOR JURY TRIAL; SUMMONS** |
| Defendants. | ) ) ) | |

## COMPLAINT

NOW COMES the Plaintiffs, MICHELLE SANFILIPPO and VICTORIA OGASAWARA, by and

through undersigned counsel, SHAWN A. LUIZ, and for Complaint against Defendants THE QUEEN'S

MEDICAL CENTER (hereinafter "Defendant QMC"); AND DOE DEFENDANTS 1-100 alleges and avers as

follows:

## JURISDICTION AND VENUE

**EXHIBIT A**

1.     This Court has jurisdiction of the claims asserted here pursuant to Hawaii Revised Statutes (hereinafter "HRS") § 603-21.5 and HRS 378-62, et al. [State whistleblower act]. The amount of damages or injuries in controversy exceeds, exclusive of attorneys fees, interest and costs, the sum of $40,000.00.

2.     Venue is proper in this Court pursuant to Hawaii Revised Statutes § 603-36(5) since a substantial part of the events or omissions giving rise to the claim occurred in the City and County of Honolulu, State of Hawaii.

## PARTIES

3.     At all times relevant herein, Plaintiffs MICHELLE SANFILIPPO and VICTORIA OGASAWARA, are residents of the City and County of Honolulu, State of Hawaii.

4.     Defendant QMC is and was at all times relevant herein a domestic non-profit corporation doing business in the County of Honolulu, State of Hawaii.

5.     The employees, agents, associates, and/or representatives of Defendant QMC were acting under the actual and/or apparent authority and/or agency of Defendant QMC. Therefore, Defendant QMC is liable for all acts and/or omissions of the employees, agents, associates, and/or representatives of Defendant QMC under the theory of apparent authority/agency, or is otherwise vicariously liable for its acts and omissions under the theory of apparent authority/agency, or is otherwise vicariously liable for its acts and omissions under the theory of apparent authority/agency.

6.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOE DEFENDANTS 1-100 and therefore sue said Defendants by such fictitious names. Plaintiff will amend their Complaint to allege their true names and thereon allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiffs' damages, as herein alleged, were proximately caused by their conduct. Plaintiffs have made good faith and diligent efforts to identify said Defendants, including interviewing individuals with knowledge of the claims herein. Plaintiff is informed and

2

believe and therefore allege that at all times herein mentioned, Defendants, and each of them, were the agents, servants and employees of each of the other Defendants herein, and were acting with the permission and consent and within the course and scope of said agency and employment.

7.     Mrs. Michelle Sanfilippo, RN, BSN, CNN (Michelle) is a registered nurse employed with Defendant QMC since May of 2009.  She was originally hired on a full-time basis and, for the reasons stated below, switched to part-time in September of 2011.  After objecting to her inclusion in Queen's on-call program, Defendant QMC repeatedly retaliated against Michelle in violation of several laws as set forth in further detail below.

8.     Mrs. Victoria Ogasawara, RN, BScN, CNN (Victoria) is a registered nurse employed with Defendant QMC since approximately March of 2010.  After objecting to her inclusion in Queen's on-call program, Defendant QMC repeatedly retaliated against Victoria in violation of several laws as set forth in further detail below.

## THE EVENTS LEADING TO DEFENDANT QMC'S RETALIATION AGAINST MICHELLE AND VICTORIA IN VIOLATION OF THE HWPA AND THE FMLA

9.     The retaliation in this case against Michelle flowed from Michelle reporting violations of law to Defendant QMC's implementation of new procedures to Queen's on-call program that calls for participation by part-time staff.

10.     Michelle was hired in May of 2009, as a full-time nurse and assigned to the Acute Hemodialysis unit.  She remained a full-time employee until September of 2011, when she switched to part-time because of the needs of her family and her husband's work schedule.

11.     Michelle and her husband have two children, ages nine and eight.  Neither of them has any other adult family members living on Oahu or elsewhere in the State.  Michelle's husband is employed by Hawaiian Airlines as a full-time instructor and charter crewmember.  His duties frequently require travel away from home, typically between 120-180 nights each year.  This travel can be anywhere from three nights away to

thirty. At one-point in 2019, he was away for seven straight weeks during the summer. There are times when he is given only seven to fourteen days' notice of the away assignments.

12.    The personal hardship is the conflict between her husband's schedule and the immediate response time required for inclusion in the on-call program. It is for this very reason that Michelle switched to part-time as, at the time, part-time employees were exempt from on-call shifts. In addition, should Michelle refuse on-call assignments, she risks her continued employment with Queen's despite having no ability to obtain acceptable childcare *on short notice* for an on-call shift.

13.    The retaliation in this case against Victoria flowed from Victoria reporting violations of law to Defendant QMC's implementation of new procedures to Defendant QMC's on-call program that calls for participation by part-time staff.

14.    In 2010 when Victoria applied for a nursing position with Defendant QMC, she did so seeking a strictly part-time position and she was hired with that understanding.   For the last ten years, she has remained on part-time status with no obligation to respond to on-call shifts.

15.    Victoria's part-time status and her *exclusion* from the on-call program is vital to her and her family. Victoria's daughter is twelve years old with developmental disabilities and cannot be left alone. Additionally, her significant other has been ill since July 2019. His health has deteriorated over the course of this year. He requires skilled caregiver services which are exponentially more expensive for overnight shifts.

16.    Inclusion in the on-call program presents both a personal and a financial hardship to Victoria's family. If Victoria is called in once a week for four weeks, a 12-hour shift at $25/hr will incur a $1,200 expense per month – something she cannot afford; yet, this is exactly what the planned implementation will require Victoria to do.

4

17.     It is also possible that the number of calls can increase as other staff members are either out sick from COVID-19 or are quarantined.  Victoria also has a work accommodation due to her asthma and cannot dialyze COVID positive patients.  In addition, should Victoria refuse on-call assignments, she risks her continued employment with Queen's despite having no ability to manage the additional expense of a skilled caregiver multiple times a month and with little notice.  Michelle also has a COVID accommodation & FMLA like Victoria due to asthma.

## MICHELLE AND VICTORIA OBJECTING TO AND REPORTING VIOLATIONS OF LAW IN GOOD FAITH

18.     Section 12.5(e) of the Queen's and Hawaii Nurses' Association (HNA) Professional Agreement provides:

> Section 12  COMPENSATION
> *     *     *
> 12.5  On-Call Pay
> *     *     *
> (e)  Before the Employer establishes an on-call program for a unit *which traditionally has not performed on-call duty, or plans to change the existing on-call policy for a unit*, the following procedures shall apply.
> (1)  The Employer will give the Union *and* the affected employees thirty (30) days' notice prior to the implementation of such a program.
> (2)  The Employer will meet with the Union if requested and discuss the method of implementation.
> (3)  The Employer *will* take into consideration any personal hardships caused by the implementation of such an on-call program.
> (4)  In implementing an on-call program, the Employer shall utilize volunteer employees to the extent possible.  [Emphasis added.]

19.     On February 4, 2019, the Queen's Human Resources department informed the HNA "of a change to start times in the Acute HD unit."  However, *nowhere* in this notice was any mention made of the implementation of new procedures for the on-call program.  Rather, it focused exclusively on the deletion of the 8:00 a.m. start time and noted that three nurses (inclusive of Michelle and Victoria) would be affected by the deletion.

20.     On or about February 8 or 11, 2019, the HNA replied to the notice requesting more information regarding the affect that the deletion of the 8:00 a.m. start time would have on patients and staff; it also requested a meeting to initiate the bargaining of such a change. *Nowhere* was any mention made of the implementation of new procedures for the on-call program.

21.     On February 28, 2019, the Defendant QMC's Human Resources department responded with further explanation of the reason for the desired deletion of the 8:00 a.m. start time. *At no time* in the letter was a change to the inclusion of part-timers in the on-call program discussed. A meeting was scheduled in the letter for March 5, 2019.  Cheryl Fallon was designated as the point of contact for answering any questions.

22.     *In September 2019, Michelle was told by the HR manager that "part-timers will soon start taking calls due to Unit council decision beginning in November or December."* Thereafter, the Shop Steward, Sheri Kearns, wrote and circulated a petition letter to change the on-call program in hemodialysis to include part-timers *which traditionally has not performed on-call duty.* The petition letter to change the on-call program in hemodialysis to include part-timers was not provided to part-time staff.

23.     In May 2020, Michelle and Victoria, along with other part-time nurses were notified that they would be taking on-call shifts effective September 2020.

24.     On June 16, 2020, Irene Puuohau notified Joan Craft, union representative of the HNA, that starting in September of 2020, Michelle and Victoria would be required as part-timers to cover on-call shifts, which was a change in the terms and conditions of Plaintiff's employment. On June 30, 2020 phone call with Joan Craft, HNA Chief Steward re: prorated call for part timers is only good for 6 months (September 2020 to February 2021) thereafter part timers' call hours will be similar to full-timers. Joan Craft stated "that doesn't seem fair but we can grieve it when the time comes".

25.     It is important to note that this letter *specifically* refers to "Section 12" of the Professional Agreement and *only* Section 12.  There is no mention of this section of the Professional Agreement when

6

Defendant QMC first notified the HNA of the change to the start times in the Acute Hemodialysis department

(February 4, 2019 letter). Nor is Section 12 referenced in their follow-up response of February 28, 2019. In

fact, it makes no mention at all of the original intent of the negotiations which was the deletion of the 8:00 a.m.

start time.

26.    Section 10 of the Professional Agreement provides:

> Section 10. HOURS OF WORK
> 10.1    Definition.    This section is intended to define the normal hours of
> work and shall not be construed as a guarantee of hours of work per day or days
> of work per week. This Section shall not be considered as any basis for the
> calculation of overtime.
>
> *    *    *
>
> 10.3    Work Shift
> (a)    The day shift will begin at or after 4:30 a.m. but before
> 12:00 noon. The evening shift will begin at or after 12:00 noon but before 10:30
> p.m. The night shift will begin at or after 10:30 p.m. but before 4:30 a.m.

27.    Any change "to the start times" on the Acute HD unit or any unit is governed by Section 10 of

the Professional Agreement *not* Section 12. It is clearly apparent that *each and every* provision of the

Professional Agreement stands alone and each and every provision was negotiated for its own merits – therefore

requiring a bargaining for any change to *any* part of it.

28.    Further, a full read of the entire Section 12 of the Professional Agreement will note the *complete*

*absence* of the word "start." Section 12 governs pay and *only* pay based on upon the circumstances of how

many hours an employee works within a given day, the processing of PTO, the different classifications for

determining pay, how pay is received, promotions, training, and payroll errors – but *absolutely nothing* about

start times.

29.    By referencing Section 12 in her June 16, 2020 letter, Ms. Puuohau cleverly insinuated the on-

call program into the collective bargaining that had taken place between Defendant QMC and the HNA and,

therefore, commits Michelle to the on-call program as if the new provisions to the on-call program to include

part-time employees had been part and parcel of the *original* negotiations as noticed in the Queen's February 4,

7

2019 letter. She even goes so far as to state that "all requirements ... to change the current on call program were met" *inclusive* of "concerns considered with respect to the impacted employees and operations."

30. It is unclear as to who's concerns were addressed during this process.

31. Michelle submitted a letter requesting reconsideration to Ms. Puuohau. In response, on July 6, 2020, Michelle was informed that Defendant QMC was "moving forward" with the new provisions of the on-call program.

32. On July 21, 2020, Michelle wrote to Dan Ross, President of the HNA, stating that her hardship had not been addressed and that step 3 of Section 12 had not been met at all. In the letter, Michelle informed Mr. Ross that (1) she was not asked to provide any information regarding her hardship; and (2) she had attempted to review the decision with Joan Craft (union representative) and was advised to either find a college student or a neighbor that could accommodate a short notice request *or find another job*.

33. On August 2, 2020, Mr. Ross replied that he could not assist further.

34. On August 15, 2020, Michelle and another nurse met with Cheryl Fallon, their Unit Manager, to discuss their inclusion in the new on-call program. In this meeting, Michelle requested that the new provisions be postponed. Nurse Fallon denied the request stating that she needed to be "fair for everyone as on-call is a burden" and that everyone needs "to keep changing with the times, needs of our department & patients." She further stated that Michelle's "part-time job without on-call was offered as a courtesy but it is not written down."

35. On call shifts requires the employee to report within thirty *minutes* of the initial MD phone call. Michelle is in no position to leave her children home alone, but she fears for her job and is in a no-win position.

36. Michelle never received proper legal notice of the proposed changes to the on-call program. The Professional Agreement mandates notice to an employee and, as a member in good standing with the Union, Michelle has a right to that notice; it is not a privilege.

8

37. Michelle expects Defendant QMC to honor step 3 of Section 12 of the Professional Agreement and allow her concerns to be addressed.

38. Defendant QMC failed to take into consideration any personal hardships for Michelle caused by the implementation of such an on-call program as the foregoing facts establish. Moreover, in implementing an on-call program, Defendant QMC's failed to utilize volunteer employees to the extent possible which is a mandatory provision of the collective bargaining agreement, not an optional one.

39. In August of 2020, Michelle and Victoria demanded that Defendant QMC rescind the "on-call" requirement for Michelle and Victoria and comply with the terms of the Professional Agreement. Otherwise, in light of Defendant QMC's failing to meet its conditions precedent of the Professional Agreement in order to place Michele and Victoria on an "on-call" status, Michelle and Victoria will file a Prohibited Practices Complaint (Unfair Labor Practice) and proceed accordingly.

40. Victoria wrote to Nona Tamanaha, Human Resources Vice President, requesting reconsideration of her inclusion to being placed on-call. In response, on July 15, 2020, Ms. Puuohau, Human Resources Director, presumably on behalf of Ms. Tamanaha, advised Victoria of her request was denied. Ms. Puuohau concluded her response with "personal hardship was considered and applied to the agreement to extend the start date 6 months to allow for preparation for the change."

41. Upon receipt of Ms. Puuohau's email, Victoria emailed the President of the HNA, Daniel Ross, regarding her concerns, specifically that she had not received notice of the pending change to being placed on-call.

42. On August 2, 2020, Mr. Ross responded that he could not assist Victoria further.

43. On August 15, 2020, Victoria and another nurse met with Cheryl Fallon, their unit manager, to discuss their inclusion to be placed on-call. In this meeting, Victoria requested that the new provisions be

9

postponed. Manager Fallon denied the request stating that she needed to be "fair for everyone as on-call is a burden" and that everyone needs "to keep changing with the times, needs of our department & patients."

44.     On call shifts requires the employee to report within thirty *minutes* of the initial MD phone call. Victoria is in no position to leave her daughter and significant other unattended and without skilled care, but she fears for her job and is in a no-win position.

45.     Victoria further asked as an accommodation not to be placed on "on call" status due to her Asthma and due to being the main caregiver for a family member (being associated with a person with a disability) pursuant to the American's With Disabilities Act and Title V of the Rehabilitation Act. Victoria's request was denied.

46.     Defendant QMC failed to take into consideration any personal hardships for Victoria caused by the implementation of being placed on-call as the foregoing facts establish. Moreover, in implementing placing Victoria on-call, Defendant QMC failed to utilize volunteer employees to the extent possible which is a mandatory provision of the collective bargaining agreement, not an optional one.

## DEFENDANT QMC'S RETALIATION AGAINST MICHELLE AND VICTORIA BEGINS

47.     Michelle and Victoria attempted to resolve their differences with Defendant QMC from September 2020 until the present day to no avail. Regarding not being retaliated against for reporting violations of law (violations of labor law): despite the Nurse's agreement specifically allowing volunteers to cover on-call requirements, each time Michelle and Victoria have attempted to utilized volunteers to cover their on-call assignment, Cheryl Fallon would retaliate, including but not limited to, Supervisor Cheryl Fallon maliciously interfered with volunteers agreeing to take Michelle and Victoria's on call status; Cheryl spoke for volunteers out of turn and said Michelle and Victoria's volunteers were too tired to take shifts; Cheryl threatened Michelle and Victoria with discipline if volunteers took on-call shifts for Michelle and Victoria. After Michelle and Victoria repeatedly objected in good faith to what they believed were violations of law (retaliation for violating

labor law), Defendant QMC retaliated further against Michelle and Victoria for enforcing their union rights, state whistleblower protection laws and national labor laws.

48. The Union has attempted to intervene with a class action grievance to protect the nurses, such as Michelle and Victoria, from being retaliated against for having volunteers take their on-call shifts, however, Defendant QMC has doubled and tripled down and further retaliated against Michelle and Victoria causing further anxiety and peril to Michelle and Victoria.

49. Defendant QMC retaliated against Michelle and Victoria in violation of HRS 378-62, et al. [State whistleblower act] for reporting violations of labor law practices in good faith - to where Michelle and Victoria suffer from nightmares; loss of appetite; chest pains; loss of sleep; loss of self worth; increase in blood pressure; migraines; and depression. Because of Defendants QMC's wrongful actions, Michelle and Victoria have lost joy and their normal enjoyment of spending time with their families due to the stress and anxiety Defendant QMC has caused Michelle and Victoria. Defendant QMC caused Plaintiffs emotional pain and suffering. Defendant QMC has caused Michelle and Victoria to walk on eggshells and constantly worry about their employment being terminated for objecting to their on-call status, lack of ability to have volunteers cover their on-call shifts, and being forced to make up on-call shifts when either Michelle or Victoria call in sick or utilize Family Medical Leave Act time off.

50. Defendant QMC, through its agents, created a hostile workplace environment by retaliating against Michelle and Victoria for reporting violations of law.

51. Upon information and belief, Defendant QMC retaliated and harassed Plaintiffs based upon Plaintiffs reporting violations of law in good faith that put employees and patients at risk.

52. In committing the above acts and omissions, Defendants acted wantonly and/or oppressively and/or with such malice as implies a spirit of mischief or criminal indifference to civil obligations and/or there has been some willful misconduct that demonstrates that entire want of care which would raise the presumption

11

of a conscious indifference to consequences, justifying an award of punitive damages in an amount to be proven at trial.

## COUNT I: VIOLATION OF HAWAII WHISTLEBLOWER'S PROTECTION ACT

53.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 52 as if said paragraphs were fully set forth herein.

54.    Upon information and belief, Defendant QMC put Plaintiffs under surveillance and monitored their activities at work. Defendant QMC punished Plaintiffs for using their FMLA when manager, Cheryl Fallon, doubled up on their on-calls after they used FLMA.  Michelle used to pick up extra 24hours (straight pay) per month. Michelle had to stop doing so (as of 2019 & 2020) for fear of manager filing for disciplinary actions re: Michelle's charting, tardiness (after 8:00a start time elimination), etc.  Throughout 2020, and now in 2021, Defendant QMC continues to threaten to discipline Michelle and Victoria as a pretext in retaliation for reporting violations of laws.

55.    The above acts by Defendant QMC with respect to Plaintiffs constitute a violation of the Hawaii Whistleblower's Protection Act, Hawaii Revised Statutes Section 378-62.

56.    As a result of the aforementioned wrongful, unlawful, and illegal acts and/or omissions of Defendant QMC as alleged herein, Plaintiffs suffered special and general damages in an amount to be proven at trial.

## COUNT II VIOLATION OF FAMILY MEDICAL LEAVE ACT

57.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 56 as if said paragraphs were fully set forth herein.

58.    For 2020 and 2021, Plaintiffs met the serious health condition requirements to qualify for FAMILY MEDICAL LEAVE ACT (FMLA).

12

59.    Plaintiffs provided medical documentation from their respective treating physicians to Defendant QMC in support of their FMLA leave requests which Defendant QMC approved.

60.    On or about October 2020 to the present, Defendant QMC unlawfully retaliated against Plaintiffs by having them suffer as a penalty to make up any shift that they utilized FMLA for being on-call.   Defendant QMC punished Plaintiffs for using their FMLA when manager, Cheryl Fallon, doubled up on their on-calls after they used FLMA.

61.    Defendant QMC violated the FMLA, 29 U.S.C. Section 2601, et seq. by willfully interfering with, restraining, or denying the exercise of any right provided under the FMLA and for opposing any practice made unlawful under the FMLA, or for any involvement in any proceeding under or relating to the FMLA.

60.    In committing the above acts and omissions, Defendants acted wantonly and/or oppressively and/or with such malice as implies a spirit of mischief or criminal indifference to civil obligations and/or there has been some willful misconduct that demonstrates that entire want of care which would raise the presumption of a conscious indifference to consequences, justifying an award of punitive damages in an amount to be proven at trial.

**WHEREFORE**, Plaintiff respectfully prays that this Court enter judgment granting the following relief on all causes of action:

a)    Return Victoria and Michelle to their original work status as part timers without an on-call requirement.

b)    Special damages as may be proven at trial;

c)    General damages as may be proven at trial;

d)    Punitive damages as the actions of Defendant QMC as described above are oppressive, outrageous, and otherwise characterized by aggravating circumstances sufficient to justify the imposition of punitive or exemplary damages;

e)    Such other and further relief as the Court may deem just and proper, including, but not limited to reasonable attorney's fees and costs of court.

DATED      Honolulu, Hawaii, March 9, 2021.

/s/ SHAWN A. LUIZ
SHAWN A. LUIZ

Attorney for Plaintiffs
MICHELLE SANFILIPPO, and
VICTORIA OGASAWARA

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

MICHELLE SANFILIPPO, and
VICTORIA OGASAWARA,

CIVIL NO. _____
(Other Non-Motor Vehicle Tort)

Plaintiffs,

vs.

THE QUEEN'S MEDICAL CENTER; AND
DOE DEFENDANTS 1-100,

**VERIFICATION**

Defendants.

---

## VERIFICATION

Plaintiff, MICHELLE SANFILIPPO, does declare and state that: She is a Plaintiff named in the verified complaint and is authorized, qualified and competent to verify the claims contained in the foregoing verified complaint; Plaintiff has read the complaint; Plaintiff has read the same and knows under penalty of law that the forgoing is true and correct.

DATED      Honolulu, Hawaii      3/7      , 2021.

Michele Sarfilippa
MICHELLE SANFILIPPO

15

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | | |
|---|---|---|
| MICHELLE SANFILIPPO, and<br>VICTORIA OGASAWARA, | )<br>) | CIVIL NO.<br>(Other Non-Motor Vehicle Tort) |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| THE QUEEN'S MEDICAL CENTER; AND | ) | |
| DOE DEFENDANTS 1-100, | ) | **VERIFICATION** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## **VERIFICATION**

Plaintiff, VICTORIA OGASAWARA, does declare and state that: She is a Plaintiff named in the verified complaint and is authorized, qualified and competent to verify the claims contained in the foregoing verified complaint; Plaintiff has read the complaint; Plaintiff has read the same and knows under penalty of law that the forgoing is true and correct.

DATED    Honolulu, Hawaii    **3/8**    , 2021.

_____
VICTORIA OGASAWARA

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | | |
|---|---|---|
| MICHELLE SANFILIPPO, and<br>VICTORIA OGASAWARA, | )<br>) | CIVIL NO. _____<br>(Other Non-Motor Vehicle Tort) |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| THE QUEEN'S MEDICAL CENTER; AND | ) | |
| DOE DEFENDANTS 1-100, | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## DEMAND FOR JURY TRIAL

Plaintiffs, by and through their attorney, SHAWN A. LUIZ, Esq., hereby demand trial by Jury on all

issues so triable herein.

DATED      Honolulu, Hawaii, March 9, 2021.

/s/ SHAWN A. LUIZ
SHAWN A. LUIZ

Attorney for Plaintiffs
MICHELLE SANFILIPPO, and
VICTORIA OGASAWARA

17

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | | |
|---|---|---|
| MICHELLE SANFILIPPO, and<br>VICTORIA OGASAWARA, | ) | CIVIL NO. _____ |
| | ) | (Other Non-Motor Vehicle Tort) |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| THE QUEEN'S MEDICAL CENTER; AND | ) | **SUMMONS** |
| DOE DEFENDANTS 1-100, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## SUMMONS

TO THE ABOVE-NAMED DEFENDANTS:

You are hereby summoned and required to file and to serve upon Plaintiffs' Attorney, Shawn A. Luiz, whose address is 841 Bishop Street, Suite 200, Honolulu, Hawaii 96813, an answer to the Complaint, which is herewith served upon you, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

This Summons shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the general public, unless a Judge of the above-entitled court permits, in writing on this Summons, personal delivery during those hours.

A failure to obey this Summons may result in an entry of default judgment against the disobeying person or party.

DATED:    Honolulu, Hawaii, _____.

_____
Clerk of Court

SHAWN A. LUIZ (6855)
841 Bishop Street, Suite 200
Honolulu, Hawaii  96813
Telephone:  (808) 538 - 0500
Facsimile:  (808) 564 - 0010
E - mail: attorneyluiz@gmail.com

Attorney for Plaintiffs
MICHELLE SANFILIPPO and
VICTORIA OGASAWARA

**Electronically Filed**
**FIRST CIRCUIT**
**1CCV-21-0000282**
**11-MAR-2021**
**02:16 PM**
**Dkt. 22 SUMM**

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

## STATE OF HAWAII

| | |
|---|---|
| MICHELLE SANFILIPPO, and VICTORIA OGASAWARA, | CIVIL NO. _____ (Other Non-Motor Vehicle Tort) |
| Plaintiffs, | |
| vs. | |
| THE QUEEN'S MEDICAL CENTER; AND DOE DEFENDANTS 1-100, | **THIRD AMENDED SUMMONS TO ANSWER COMPLAINT** |
| Defendants. | |

## THIRD AMENDED SUMMONS TO ANSWER COMPLAINT

TO THE ABOVE-NAMED DEFENDANTS:

You are hereby summoned and required **to file with the court** and to serve upon Plaintiffs' Attorney, Shawn A. Luiz, whose address is 841 Bishop Street, Suite 200, Honolulu, Hawaii 96813, an answer to the Complaint, which is herewith served upon you, within twenty (20) days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

This Summons shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the general public, unless a Judge of the above-entitled court permits, in writing on this Summons, personal delivery during those hours.

1

A failure to obey this Summons may result in an entry of default judgment against the disobeying person or party.

DATED:        Honolulu, Hawaii,  3/11/2021

                                                    /s/ K. UEMURA

                                                    Clerk of Court

4